# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Holly Rae Lakeman,                               Civil No. 10-4265 (DWF/SRN)

           Petitioner,

v.                                                                  **ORDER**

Mathew Thomas Weed,

           Respondent.

_____

Valerie A. D. Arnold, Esq., Tuft & Arnold, PLLC, counsel for Petitioner.

Patrick C. Burns, Esq., Erik F. Hansen, Esq., and Anna M. Hagstrom, Esq., Patrick Burns & Associates, counsel for Respondent.

_____

## INTRODUCTION

       Through a petition brought pursuant to the Hague Convention on the Civil Aspects of International Child Abduction, art. 2, Oct. 25, 1980, T.I.A.S. No. 11,670, 1343 U.N.T.S. 89, reprinted in 51 Fed. Reg. 10,494 (Mar. 26, 1986) (the "Hague Convention" or "Convention"), as implemented by the International Child Abduction Remedies Act, 42 U.S.C. §§ 11601-11610 (2009) ("ICARA"), Petitioner Lakeman seeks return of her son, ATW, from Respondent Weed. This matter is currently before the Court in advance of an evidentiary hearing which is scheduled to begin on November 1, 2010. The Court has set aside two days for the evidentiary hearing but does not necessarily concede that two days should be necessary for the issues before the Court. Because the parties

disagree on the scope of the evidentiary hearing, the Court required the parties to submit memoranda outlining their respective positions regarding the legal issues surrounding the scope of the evidentiary hearing, which will be held to resolve any factual disputes in this case. Below, the Court outlines which legal issues that will define the scope of the November 1 hearing.

## BACKGROUND

Lakeman is a Canadian resident residing in Calgary, Albert, Canada. Weed is a Minnesota resident residing in Burnsville, Minnesota. ATW is the six-year-old son of Lakeman and Weed.[1] In December 2009, Lakeman's fiancé died, and Lakeman made arrangements for Weed and his parents to care for ATW. There are disputes concerning the specific details of that arrangement. At some point prior to commencing this action, Lakeman sought to have ATW returned to her in Canada. Weed refused.

Lakeman then sought and obtained an Ex Parte Order filed by the Queen's Bench of Alberta, Judicial District of Calgary, on August 27, 2010, which directed the return of ATW to Canada no later than September 3, 2010.[2] On September 7, 2010, Weed filed an

---

[1] The Convention applies to children under the age of sixteen. Hague Convention, art. 4.
[2] There is a dispute as to when Weed became aware of the Canadian Order, although it appears that he at least became aware of it via text messaging on September 2, 2010. However, when filing his Dakota County Court action, Weed averred that no United States or Canadian court had made any previous custody determination. (Doc. No. 1-1, Ex. 5B at ¶ 16.) When the Court asked Weed's counsel—who was the same counsel that represented Weed in the Dakota County action—when he or his client became aware of the Canadian Order, Weed's counsel replied that Weed never received a
(Footnote Continued on Next Page)

2

action in Dakota County District Court for a temporary custody order of ATW. The Dakota County District Court initially granted Weed's request, but it subsequently stayed its order and the United States State Department informed the Dakota County District Court of the August 27, 2010 Order by the Canadian court. After Weed refused to return ATW pursuant to the Canadian Order, Lakeman filed a Verified Petition for the Return of a Child under ICARA in this Court, asserting that Weed has wrongfully retained ATW in violation of the Hague Convention.

## DISCUSSION

The beginning of any discussion of the Hague Convention should begin with what it is not: It is not a custody proceeding. Article 19 of the Hague Convention and 42 U.S.C. § 11601(b)(4) prohibit a court from determining the merits of any underlying child custody claims; rather, a court must only determine the parties' rights under the Hague Convention for the return of the child. Hague Convention, art. 19 ("A decision under this Convention concerning the child shall not be taken to be a determination on the merits of any custody issue"); 42 U.S.C. § 11601(b)(4) ("The Convention and this chapter empower courts in the United States to determine only rights under the Convention and not the merits of any underlying child custody claims"). It is axiomatic that the primary purpose of the Convention is "to restore the *status quo ante* and to deter

---

(Footnote Continued From Previous Page)

copy of the Canadian Order and that counsel was not aware of that Order at the time of the Dakota County filing.

parents from crossing international boundaries in search of a more sympathetic court." *Silverman v. Silverman*, 338 F.3d 886, 899 (8th Cir. 2003) (en banc).

The United States and Canada are both signatories to the Hague Convention, which was adopted in 1980 to address the problem of intercountry child abduction under international law. The Convention seeks to "protect children internationally from the harmful effects of their wrongful removal or retention" caused either by the removal of a child from the state of its habitual residence or the refusal to return a child to the state of its habitual residence. Hague Convention Preamble. The Convention accomplishes this goal by providing a forum selection mechanism, as opposed to establishing substantive law, which operates under the principle that a child's habitual residence is the best place to decide questions of custody and access. *Barzilay v. Barzilay*, 600 F.3d 912, 916 (8th Cir. 2010).

A party invokes the protections of the Convention in the United States by filing a petition in either federal or state court under ICARA. 42 U.S.C. § 11603(b) ("Any person seeking to initiate judicial proceedings under the Convention for the return of a child . . . may do so by commencing a civil action by filing a petition for the relief sought in any court which has jurisdiction of such action and which is authorized to exercise its jurisdiction in the place where the child is located at the time the petition is filed."); § 11603(a) (vesting concurrent original jurisdiction over Hague petitions in the state and federal courts). ICARA further provides that "[t]he court in which an action is brought under [§ 11603(b)] shall decide the case in accordance with the Convention." § 11603(d).

The key inquiry under the Convention is whether a child has been wrongfully removed from the country of its habitual residence or wrongfully retained in a country other than that of its habitual residence. *Barzilay*, 600 F.3d at 917. A retention or removal is wrongful only if it meets the requirements of Article 3 of the Convention:

The removal or the retention of a child is to be considered wrongful where-

> a) it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and
> b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

Hague Convention, art. 3.

"Wrongful retention" refers to the act of keeping a child without consent of the person who was actually exercising custody. The archetype of this conduct is the refusal by the noncustodial parent to return a child at the end of an authorized visitation period. *Sorenson v. Sorenson*, 559 F.3d 871, 873 (8th Cir. 2009). The term "wrongful retention" is intended to cover cases "where the child, with the consent of the person who normally has custody, is in a place other than its place of habitual residence and is not returned by the person with whom it is staying." Elisa Perez-Vera, Explanatory Report para 57, in 3 Hague Conference on Private International Law, Acts and Documents of the Fourteenth Session, Child Abduction 426 (1982).[3]

---

[3] Elisa Perez-Vera was the official Hague Conference Reporter, and her report is generally recognized as "the official history and commentary on the Convention." Legal
(Footnote Continued on Next Page)

To prevail on a return for a child under the Hague Convention, a petitioner must establish by a preponderance of the evidence that his or her child was "wrongfully removed or retained within the meaning of the Convention." 42 U.S.C. § 11603(e)(1). Article 3 of the Hague Convention sets forth that "[t]he removal or the retention of the child is to be considered wrongful where . . . it is in breach of rights of custody attributed to a person . . . either jointly or alone, under the law of the State in which the child habitually resided immediately before the removal or retention"; and "at the time of the removal or retention those rights were actually exercises, either jointly or alone, or would have been so exercises but for the removal or retention." Hague Convention, art. 3. For the purposes of the Hague Convention, "'rights of custody' shall include rights relating to the care of the person of the child and, in particular, the right to determine the child's residence; . . ." Hague Convention, art. 5.

**I.     Lakeman's Prima Facie Case**

There is no question that Petitioner bears the burden of showing, by a preponderance of the evidence, that ATW has been wrongfully retained in Minnesota. *See* 42 U.S.C. § 11603(e)(1)(A). To establish this, Petitioner must show: (1) that the habitual residence of ATW was Canada immediately prior to the time of the retention; (2) that she had custody rights over ATW at the time of the retention; and (3) that she was

---

(Footnote Continued From Previous Page)

Analysis of the Hague Convention on the Civil Aspects of International Child Abduction, 51 Fed. Reg. 10,494, 10,503 (1986). Her full report is available at http://www.hiltonhouse.com/articles/Perez_rpt.txt.

exercising those custody rights. *Nicholson v. Pappappalardo*, 605 F.3d 100, 103 (1st Cir. 2010).

Therefore, in general, in order to determine a case for return, a court must determine (1) when the removal or retention took place; (2) what the habitual residence of the child was immediately prior to the removal; (3) whether the removal or retention violated the petitioner's custody rights under the law of habitual residence; and (4) whether the petitioner was exercising those rights at the time of the removal. *Barzilay*, 600 F.3d at 917. Hague Convention cases make clear, however, that this framework often gets collapsed, depending on the facts of a particular case. Therefore, the Court will adapt the framework to fit the facts of this case.

### A. Date of Retention

The first step in determining a child's habitual residence is to discern when the alleged wrongful retention took place because the Hague Convention "directs courts to only one point in time in determining habitual residence: the point in time immediately before the removal or retention." *Silverman*, 338 F.3d at 897 (quoting Hague Convention, art. 3). In general, the wrongful retention does not begin until the noncustodial parent clearly communicates his or her desire to regain custody and assert his or her parental rights to have the child live with that parent. *See Slagenweit v. Slagenweit*, 841 F. Supp. 264, 270 (N.D. Iowa 1993).

Because this case is a wrongful retention, as opposed to a removal or abduction case, it is not clear when the alleged wrongful retention occurred. Lakeman seems to assert that the wrongful retention occurs in early 2010 when she requested that Weed

return ATW to Canada. Weed asserts that there has been no wrongful retention because the Petitioner, in the words of the Respondent, either "surrendered," "transferred," or "consented and acquiesced" to the custody of ATW with the Respondent. Alternatively, the Respondent asserts that if there was a wrongful retention, it did not occur until at least August 27, 2010, when the Canadian Order was entered.

Given the parties' dispute concerning this issue, the Court will allow the parties to introduce evidence at the November 1 hearing that concerns facts necessary to establish the date of the alleged wrongful retention.

### B. Habitual Residence

The term "habitual residence" is not defined in the Hague Convention or by ICARA. A child's "habitual residence" is, as the parties concede, a mixed question of law and fact that is intended to be a fluid concept to allow for the consideration of the particular facts of each individual case. The federal courts look to the "parents' shared intent or settled purpose regarding their child's residence" in initial determinations of a child's habitual residence. *Nicholson*, 605 F.3d at 104.

To determine the habitual residence of a child, "the court must focus on the child, not the parents, and examine past experience, not future intentions." *Sorenson* at 873. The Eighth Circuit has recognized that a habitual residence determination is a highly factual inquiry that varies considerably in each situation. *Silverman*, 338 F.3d at 896; *see also Rydder v. Rydder*, 49 F.3d 369, 373 (8th Cir. 1995) (quoting with approval *Friedrich v. Friedrich*, 983 F.2d 1396, 1401 (6th Cir. 1993) for position that "we will resist the temptation to develop detailed and restrictive rules as to habitual residence . . . the facts

8

and circumstances of each case should continue to be assessed without resort to presumptions or presuppositions"); *Karkkainen v. Kovalchuk*, 445 F.3d 280 (3rd Cir. 2006) (noting that the inquiry "is a fact-intensive determination that cannot be reduced to a predetermined formula and necessarily varies with the circumstances of each case . . . especially true in cases . . . where the petitioning parent initially agreed to allow the child to stay for an indefinite amount of time.").

Given this and using the framework outlined by the Eighth Circuit outlined above, the Court finds instructive cases that have analyzed this issue in the context of a wrongful retention situation where one parent took a child, with permission, and then refused to return the child to that parent. *See, e.g.*, *Karkkainen*, 445 F.3d 280 (explaining that the inquiry considers whether a child has made a country her home before the date of her removal or retention and discussing unique factual situation in that case where parents allowed child to choose her own residence); *Mozes v. Mozes*, 239 F.3d 1067, 1077 (9th Cir. 2001) (discussing the "in between" cases, where courts have to do a detailed factual inquiry after one parent initially agrees to allow children to leave one country but later withdraws that consent); *Haimdas v. Haimdas*, --- F. Supp.2d ---, No. 09-CV-02034 (ENV)(MDG), 2010 WL 2342377 (E.D.N.Y. June 8, 2010) (determining that the children's habitual residence was England because that was the last place both parents mutually agreed was their children's habitual residence and reaching that determination despite the fact that the children had been living in the United States for approximately 17 months at the time of the trial); *Blanc v. Morgan*, --- F. Supp.2d ---, Case No. 2:10-cv-02314, 2010 WL 2696791 (W.D. Tenn. July 9, 2010) (declining to find that

father's failure to insist upon a definite date of return resulted in the loss of his ability to determine daughter's habitual residence); *Slagenweit*, 841 F. Supp. at 266 (N.D. Iowa 1993) (considering substantial passage of time from the removal to the wrongful retention and the fact that the parents had mutually agreed that the child would remain in Iowa for an indefinite period of time).

Lakeman asserts that ATW's habitual residence is Canada. In contrast, Weed offers two arguments, the first being that ATW's habitual residence before and after December 2009 was Minnesota and second, at a minimum, ATW's habitual residence changed to Minnesota after ATW came to live with him in December 2009. Based on the Court's review of relevant case law, the Court will allow the parties to introduce evidence at the November 1 hearing to establish the last place both parents mutually agreed was ATW's habitual residence and the circumstances surrounding ATW's 2009 move from Canada to the United States. This inquiry necessarily focuses back in time, not forward, and relates to the geography at the time prior to the date of alleged wrongful retention.

### C. Custody Rights

Lakeman must also establish that ATW's retention violated her custody rights under the law of habitual residence and that she was exercising those rights at the time of the removal. Lakeman asserts that she had custody rights under the Alberta Family Law Act and that she was exercising those rights because "a parent who sends his or her child to live with a caretaker has not relinquished custody rights, but rather has exercised them within the meaning of the Convention." Public Notice 957 at 10506. Weed does not concede that the Alberta Family Law Act applies but asserts that if it does, the retention

of ATW did not violate Lakeman's custody rights because she was or is not the sole guardian of ATW under Canadian law.

The existence of custody rights are a question of law that the Court can determine after determining whether Canada or Minnesota is ATW's habitual residence. Moreover, the evidence to establish whether or not Lakeman was exercising her custodial rights will be the same or similar evidence used to establish the date of alleged wrongful retention and habitual residence.

## II. Weed's Defenses

If a petitioner satisfies his or her burden of proof by establishing by a preponderance of evidence his or her right of return, a court must order the immediate return of the child, unless one of the exceptions set forth in Articles 12,[4] 13, or 20[5] of the

---

[4] Article 12 applies when there has been a delay of more than a year from the date of the removal until the commencement of the proceedings and the children have become settled in their new environment. Hague Convention, Art. 12. 42 U.S.C. § 11603(f)(3) explains that "the term 'commencement of proceedings,' as used in Article 12 of the Convention, mean, with respect to the return of a child located in the United States, the filing of a petition in accordance with subsection (b) of this section." In the present matter, Lakeman filed her petition on October 18, 2010, and although the date of wrongful retention may be disputed, it is undisputed that the date of retention was less than a year prior to October 18, 2010. Therefore, contrary to Weed's assertion, this exception does not, as a matter of law, apply in this situation. Therefore, Weed may not introduce evidence to establish this defense. Besides, if the Court were to find that Weed is correct in his assertion that ATW has been living with him in Minnesota from December 2008 through the present time with "an extended visit with Petitioner from August 2009 to December 2009" (Doc. No. 16 at 12), the Court would also have to conclude that Minnesota was ATW's habitual residence, and it would not need to reach this defense.

[5] Article 20 contemplates a situation in which the return of the child "would not be permitted by the fundamental principles of the requested State relating to the protections

(Footnote Continued on Next Page)

Hague Convention applies. All three exceptions are to be narrowly construed. *Rydder*, 49 F.3d 372. Weed asserts that two exceptions apply in this case under Article 13.[6]

### A. Article 13(a) Defense

The Hague Convention provides that a Court is not bound to return the child if the respondent establishes by a preponderance of evidence that the petitioner had consented to or subsequently acquiesced in the removal or retention of the child. Hague Convention, Art. 13(a); *see* 42 U.S.C. § 11603(e)(2)(B). Lakeman adamantly asserts that she did not consent to the retention. Weed, conversely, asserts that Lakeman did because she gave Weed and his parents ATW without any future plans for return.

Consent "focuses on [the petitioner's] intent prior to the . . . retention" and "may be evinced by the petitioner's statements or conduct, which can be rather informal." *Nicolson v. Pappalardo*, 605 F.3d 100, 105 (1st Cir. 2010) (citations omitted). However, "[t]he fact that a petitioner initially allows children to travel, and knows their location and how to contact them, does not necessarily constitute consent to removal or retention under the Convention." *Baxter v. Baxter*, 423 F.3d 363, 371 (3rd Cir. 2005) (citations

---

(Footnote Continued From Previous Page)

of human rights and fundamental freedoms." Hague Convention, Art. 20. There is no suggestion by the parties that this exception is applicable to these proceedings.

[6] In his memorandum, Weed also asserts that "this fact scenario does not constitute a wrongful retention under the terms of the Hague Convention. Rather, in circumstances such as this, where both parents have custodial rights, the Hague Convention does not apply." (Doc. No. 16 at 4.) To support this proposition, Weed relies on three "access rights" cases, all of which have been either reversed or impacted by *Duran v. Beaumont*, 130 S. Ct. 3318 (U.S. May 24, 2010). There is nothing in the record to suggest that this is such a case.

omitted). Moreover, if the "petitioning parent had earlier consented to let the child stay abroad for some period of ambiguous duration," determining intent becomes more difficult. *Mozes*, 239 F.3d at 1077. A court must closely examine the "historical and narrative facts" to deduce the shared intent of the parents at the time the petitioning parent consented to the child's travel. *Id*. at 1078 (citations omitted). If those facts indicate the parents contemplated further negotiation over the duration of the child's stay, a mutual intent to abandon should not be inferred. *Id*. at 1077; *see, e.g., Meredith v. Meredith*, 759 F. Supp. 1432, 1433 (D. Ariz. 1991) (finding no shared intent when the petitioner suggested that the respondent take the children to France to visit the respondent's parents for an unspecified duration). On the other hand, abandonment may be inferred if the Court determines that, "despite the lack of perfect consensus," the parties understood the stay abroad might last indefinitely. *Mozes*, 239 F.3d at 1077.

Based on a review of the case law above and understanding the highly factual inquiry that is necessary to establish this defense, the Court will allow the parties to introduce evidence similar to that introduced with respect to the prima facie case that concerns the circumstances surrounding ATW's move from Canada to Minnesota and arrangements and discussions had subsequent to that move concerning the parties' intent with respect to ATW.

### B. Article 13(b) Defense

Weed argues that the Court should deny return of ATW to Canada because "there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." Hague Convention, Art.

13

13(b). A respondent has the burden to establish that this exception applies by clear and convincing evidence. 42 U.S.C. § 11603(e)(2)(A).

The Eighth Circuit listed two types of grave risk that are appropriate under Article 13(b): sending a child to a "zone of war, famine, or disease," or in cases of serious abuse or neglect." *Silverman*, 338 F.3d at 900 (citing *Friedrichs v. Friedrichs*, 78 F.3d 1060, 1069 (3d Cir.1996) (finding that a grave risk exists "in cases of serious abuse or neglect, or extraordinary emotional dependence, when the court in the country of habitual residence for whatever reason may be incapable or unwilling to give the child adequate protection.")). The Article 13(b) inquiry must focus on "whether the child will face immediate and substantial risk of an intolerable situation if [the child] is returned to Mexico pending final determination of [the] parents' custody dispute." *Id*. "It is not relevant to this Convention exception who is the better parent in the long run, or whether [the respondent] had a good reason to leave her home and terminate marriage." *Nunez Escudero* 58 F.3d at 377. Rather, a respondent must set forth specific evidence establishing "whether the child will face immediate and substantial risk of an intolerable situation if he is returned to . . . pending final determination of his parents' custody dispute." *Id.* The court can, however, "consider the environment in which the child will reside upon returning to the home country." *Id*. And to ensure that the child is adequately protected, the court's inquiry must also "encompass some evaluation of the people and circumstances awaiting that child in the country of [the child's] habitual residence." *Id*. at 378.

The high standard necessary to establish the Article 13(b) defense cannot not be established by the introduction of Article 12-defense-like evidence that would allow a respondent to profit from a wrongful retention by showing that taking a child from one country would cause him or her grave harm.  *See Silverman*, 338 F.3d at 901 ("A removing parent must not be allowed to abduct a child and then-when brought to court- complain that the child has grown used to the surroundings to which they were abducted" (internal citations and quotations omitted).).  Based on the Court's review of relevant case law, the Court will allow the parties to introduce evidence at the November 1 hearing concerning ATW's condition when he arrived in Minnesota and the opportunities available to ATW if he were to return to Canada.  At this time, the Court will not allow Weed to introduce testimony from a psychologist.

Specifically, as it relates to Respondent's allegations of grave risk in the event ATW were to be returned to Canada, the Court will permit evidence to be submitted by both parties if it relates to the condition of ATW at the time he came to Minnesota in December 2009 to the extent that Respondent asserts that this would circumstantially establish grave risk.  In other words, the Court will permit the Respondent to present testimony on the mental and emotional condition of ATW in December 2009.  If it remains the position of the Respondent, in light of the Court's order, that he should have the right to address the issue of grave risk going back to a time period prior to December 2009, the Court will require an offer of proof before proceeding on that issue so that the Court can make a ruling as to admissibility and scope of admissibility, if that remains an issue.

## CONCLUSION

The parties are allowed to introduce evidence at the evidentiary hearing commencing on November 1, 2010, that is consistent with this Order.

**IT IS SO ORDERED.**

Dated:  October 29, 2010         s/Donovan W. Frank
                                 DONOVAN W. FRANK
                                 United States District Judge